**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION**

ZACHARY BRILL, individually
and on behalf of all others similarly
situated,

       Plaintiff,

v.

LANDMARK PROPERTY SERVICES, LLC
d/b/a LANDMARK PROPERTIES and 908 –
SCANNELL (TALLAHASSEE), LLC,

      Defendants.

_____/

CASE NO.:


**CLASS ACTION COMPLAINT**

**<u>JURY TRIAL DEMANDED</u>**

## <u>COMPLAINT</u>

### Summary of the Claims

1.    Defendant, Landmark Property Services, LLC d/b/a Landmark Properties (hereinafter referred to as "Landmark") manages private student housing at colleges and universities throughout Florida, including The Nine at Tallahassee a/k/a Nine Tallahassee at Florida State University, apparently owned by Defendant, 908 – Scannell (Tallahassee), LLC, (hereinafter referred to as "The Nine") where Plaintiff, Zachary Brill, leased a student housing apartment. The core offering of these student housings are the resort-style community amenities and the college experience: closely-packed shared living quarters, rooftop resort-style pool, community activities, fitness room, gaming lounge, 24/7 printing & study center and close ties to the universities.

2.    As a result of the COVID-19 pandemic, universities throughout Florida and the nation have ordered that the university campuses be vacated to preserve the safety of the students and the public.  The university-run facilities that students have been asked to evacuate include

residences similar in physical layout to the facilities operated and managed by the Defendant, which were recognized as unsafe due to the elevated risk of disease transmission inherent to high-density housing with extensive shared common areas.  Furthermore, these universities, recognizing that it would be inequitable and improper to charge students for housing that became unsafe to occupy, have been refunding housing money to students and their families.

3.      In contrast to the responsible actions of the universities, Landmark, is retaining all funds that their tenants have paid — and continues to demand payment from those who pay month-to-month — for room, and other services and amenities, even though Landmark cannot safely provide them and the students have moved out.

4.      Plaintiff brings this action on his own behalf and on behalf of a class of persons who executed leases to reside at the student housing managed by Defendant, Landmark, throughout Florida, but who have not received the bargained-for services.

## Parties

5.      Plaintiff, Zachary Brill, is a citizen of Florida, residing in Weston.  Mr. Brill signed a lease for a bedroom that is part of a unit of bedrooms within the floor plan D3 at The Nine for the Fall 2019-Summer 2020 academic school year.

6.      Defendant, Landmark Property Services, LLC d/b/a Landmark Properties, is a Florida corporation.  Defendant, Landmark, is the manager of more than 102 student housing apartment complexes, throughout the United States.

7.      Defendant, 908 – Scannell (Tallahassee), LLC ("hereinafter referred to as 908") is the landlord of The Nine and, as did all other landlords of Florida student housing properties managed by Landmark, contracted with Landmark to provide property management, ranging from day to day operations and financial budgeting, to marketing and product development. The precise

relationship between Defendant, 908, and Defendant, Landmark, is unknown, but will be revealed by discovery.

## Jurisdiction and Venue

8.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d)(2)(A), because this case is a class action where the aggregate claims of all members of the proposed Class are in excess of $5,000,000, exclusive of interest and costs, and most members of the proposed Class are citizens of the state of Florida.

9.     This Court has general jurisdiction over Defendants, which conduct substantial business within Florida, and thus has significant, continuous, and pervasive contacts with the State.

10.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391, because the challenged fee practices have been committed in this District, and because Plaintiff suffered the alleged harm in this District.

## Facts

### A.  Landmark advertises and sells "student apartments" to college students.

11.     Student housing is in high demand at Florida State University and nearby colleges. Students may choose to live in college-owned dormitories or private off-campus apartments. The Nine, managed by Defendant, Landmark, offers a third option — "student apartments" in Tallahassee, Florida, serving attendees of Florida State University, Tallahassee Community College, and Florida Agricultural and Mechanical University.

12.     Landmark advertises its student housing to its target demographic — college students — stating their student housing was "designed specifically for the technology-driven, go getter students of today." They further advertised "[t]he best apartment features & resort-style community amenities in town, all within walking distance to Doak Campbell Stadium and the

heart of the Florida State University campus." In addition, touts amenities specifically geared to students, such as; 24/7 print and study centers, clubhouse, resort-style pool, grilling station, TV lounge with gaming consoles, coffee bar, fitness room and fire pit.

13.     In addition to The Nine, Landmark manages at least eleven additional private student apartments in Florida, including; The Standard at Tampa, The Station Alafaya, The Standard at Tallahassee, The Retreat at USF, The Standard at Gainesville, The Retreat at Gainesville, GrandMarc Tallahassee, The One at University City, The Standard Coral Gables, and The Retreat East.

14.     The lease agreement executed by Plaintiff and all other Class Members of Landmark's Florida student housing locations are substantially similar, if not identical.

15.     Each lease agreement entered into by Plaintiff and Class Members was executed by an employee of Landmark, on behalf of the landlord.

16.     As will be demonstrated through discovery, Landmark handled all decision making regarding operations, closures as a result of the COVID pandemic, and decisions regarding lease payments and collections at each of the private Florida student housings it managed.

**B. Allegations Regarding Plaintiff, Zachary Brill**

17.     Plaintiff, Zachary Brill, is a student at Florida State University. He selected The Nine based primarily on its student housing amenities, particularly its close proximity to the campus of Florida State University, living arrangements, clubhouse, resort-style pool, grilling station, gaming lounge, coffee bar, fitness room and fire pit.

18.     Plaintiff, Zachary Brill,  executed a Lease Agreement for the Fall 2019, Spring 2020 and Summer 2020 semester. Plaintiff was eligible to move into the apartment on August 21,

2019. The signatory to the contract was employed by Defendant, Landmark, who signed the contract on behalf of the landlord, 908 – Scannell (Tallahassee), LLC.

19.     Due to the COVID-19 pandemic, Plaintiff vacated his four person apartment in March, to return to his permanent residence with his family.

20.     Plaintiff, Zachary Brill, paid monthly installments of $899 through his entire contract term of August 21, 2019 to July 31, 2020. He paid on time every month even though he was no longer living on site.

21.     Landmark refuses to return monies paid for part of the month of March through August although this money were collected for services Landmark did not, and could not, perform even though it appears the Defendant received a PPP Loan a/k/a Paycheck Protection Loan of up to Ten Million Dollars ($10,000,000).

**C. University Campuses Shut Down in Response to the COVID-19 Pandemic, and Defendant Cannot Provide the Bargained-For Services.**

22.     On March 9, 2020, Florida Governor Ron DeSantis issued Executive Order 20-52 declaring a state of emergency for the entire state of Florida a result of COVID-19.

23.     On March 13, 2020, President Donald Trump issued a Proclamation Declaring a National Emergency based upon the COVID-19 outbreak.

24.     On March 16, 2020, President Trump and the Center for Disease Control and Prevention ("CDC") issued the "15 days to slow the spread" guidance to slow the spread of the virus, advising individuals of social distancing measures such as avoiding gatherings of more than 10 people, and recommending restrictions for establishments tending to attract mass gatherings and congregations.

25.     Between March 18, 2020, and March 20, 2020, all six Florida universities served by Landmark announced that all classes would transition to remote learning through the end of the

Spring 2020 semester, canceling all on-campus events due to the COVID-19 pandemic. Students who lived in on-campus housing were told they had to move out or were strongly encouraged to do so, such that they had no meaningful choice but to comply.

26.     Further, because all classes were moved online, there was no reason for students to remain near campus if they had other housing available to them.  This is particularly so in the face of the dangers, risks, and fear associated with the pandemic.

27.     Most students across the state left campus to be with their families, and to avoid exposure to COVID-19, and they have stayed off campus to comply with directives from the schools, as well as local, state and federal governments.

28.     Recognizing that the on-campus dormitory rooms, meal plans, and services could not be safely used by the students, the universities have agreed to return a fair portion of the students' room.

29.     Not Landmark. Despite their March 11, 2020 assurance they would "coordinate with our partner university's protocols as needed," the fact that the student housing cannot safely be occupied by the students, and the fact that the bargained-for amenities could not safely be provided, the Defendant has refused to return any portion of the room and other fees it has collected.

30.     On March 16, 2020, Landmark informed students at The Nine it would remain "open for business" despite the closure of all on-campus activities, including classes, for its serviced schools, and notwithstanding official recommendations of social distancing and the avoidance of groups of 10 or more people. This claim of remaining open, is not only a sham, but was extraordinarily dangerous.  (See attached **Exhibit 1**)

31.    Additionally, on March 16, 2020, Landmark informed students at The Nine that "[a]ll amenities will be closed until further notice" and advised "[g]roup gatherings in units should be avoided. Any such gatherings should be limited to no more than two (2) guests per unit." (See Exhibit 1). However, The Nine has units with up to six bedrooms!  Plaintiff lived with three other roommates.

32.    On March 19, 2020, Landmark informed students at The Nine that it was decided to eliminate all in-person visits to its offices until further notice.

33.    On March 24, 2020, Governor DeSantis issued Executive Order 20-83, directing the State Surgeon General and State Health Officer to issue a public health advisory urging the public to avoid all social or recreational gatherings of 10 or more people, stating "it is necessary and appropriate to take action to ensure that the spread of COVID-19 is slowed, and that residents and visitors in Florida remain safe and secure."

34.    On March 29, 2020 President Trump extended the guidelines to be in effect until April 30, 2020.

35.    On March 30, 2020, Landmark sent an email to all its residents and guarantors stating that the terms of the current housing agreement "remain in place" (See attached **Exhibit 2**). Although Landmark "closed all resident amenity spaces," cancelled all resident events, and suspended any non-essential work, they stated they were "unable to offer early termination or void the agreement," and therefore expected continued payment.

36.    On March 31, 2020 the President updated the guidelines renaming it "30 Days to Slow the Spread" and along with the Coronavirus Task Force urged Americans to adhere to the guidelines.

37.     Landmark's inability to safely provide its bargained-for service was highlighted by their April 1 email to all of its residents and guarantors, advising that they "identified residents and their guests" who were breaching safety guidelines and as a result Landmark issued a number of fines.  (See **Exhibit 3**). Landmark continued to demand payment from students who vacated the premises because it was not safe to remain, and issued fines to a number of students who remained in the complexes, presumably believing them to be safe.

38.     As a result of the pandemic Landmark closed its amenities, suspended interior maintenance requests and laid off numerous employees.

39.     Landmark's demand for payment and refusal to provide partial refunds, despite being unable to provide the services agreed upon defies equity, common sense and is in diametrical opposition to the Governor and President's directives concerning the dangers of staying in their facilities.

40.     The purpose of the parties' Lease Agreement[1] was to provide student housing and amenities – including living arrangements, 24/7 printing and study lounge, clubhouse, resort-style pool, grilling station, gaming lounge, coffee bar, fitness room and fire pit.

41.      This purpose was frustrated when the campus closed and students were ordered home, no longer attending on-campus classes.

## CLASS ALLEGATIONS AGAINST LANDMARK

42.     Plaintiff bring this action as a class action under Federal Rule of Civil Procedure 23(a), (b)(2), (b)(3) as a representative of the following Class:

---

[1] Upon information and belief, Landmark executed a lease agreement with each Plaintiff and Class Member. Details as to Landmarks' relationship with landlords and class members will be more thoroughly established through discovery and a review of the contract between Landmark and the Florida Property landlords.

All people who paid the costs of room and fees for and on behalf of students residing in Landmarks' Florida student apartment complexes, including; The Standard at Tampa, The Station Alafaya, The Standard at Tallahassee, The Retreat at USF, The Standard at Gainesville, The Retreat at Gainesville, GrandMarc Tallahassee, The One at University City, The Standard Coral Gables, and The Retreat East for the Spring 2020 semester who moved out prior to the completion of the semester because of school closures relating to COVID-19.

43.     Plaintiff reserve the right to amend or modify the Class definition with greater specificity or further division into subclasses or limitation to particular issues, as discovery and the orders of this Court warrant.

44.     Excluded from the Class are Defendants', the officers and directors of the Defendants at all relevant times, members of Defendants' immediate families and their legal representatives, heirs, successors or assigns, and any entity in which Defendants have or had a controlling interest.

45.     Plaintiff is a member of the Class he seeks to represent.

46.     Landmark has thousands of customers that have paid room, and fees while schools were closed, and students ordered to return home. Accordingly, members of the Class are so numerous that their individual joinder herein is impracticable. The precise number of Class members and their identities are unknown to Plaintiff at this time but may be determined through discovery.  Class members may be notified of the pendency of this action by mail and/or publication through the distribution records of Landmark.

47.     Common questions of law and fact exist as to all Class members and predominate over questions affecting only individual Class members. Common legal and factual questions

9

include, but are not limited to, whether Landmark has refused to offer refunds and whether it has breached its contracts with its customers or otherwise acted unlawfully.

48.     The claims of the named Plaintiff are typical of the claims of the Class in that the named Plaintiff was charged rental fees and suffered losses despite being ordered to leave campus and return home by school and government officials.

49.     Plaintiff is an adequate representatives of the Class because Plaintiff's interests do not conflict with the interests of the Class members Plaintiff seeks to represent, Plaintiff has retained competent counsel experienced in prosecuting class actions, and Plaintiff intends to prosecute this action vigorously. The interests of Class members will be fairly and adequately protected by Plaintiff and his counsel.

50.     The class mechanism is superior to other available means for the fair and efficient adjudication of the claims of the Class members. Each individual Class member may lack the resources to undergo the burden and expense of individual prosecution of the complex and extensive litigation necessary to establish Landmark's liability. Individualized litigation increases the delay and expense to all parties and multiplies the burden on the judicial system presented by the complex legal and factual issues of this case.  Individualized litigation also presents a potential for inconsistent or contradictory judgments.  In contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court on the issue of Landmarks' liability.  Class treatment of the liability issues will ensure that all claims and claimants are before this Court for consistent adjudication.

**COUNT I**
**Unjust Enrichment**

51.     Plaintiff hereby incorporates by reference the allegations contained in 1-50 of this Complaint.

52.     Plaintiff brings this on his own behalf and on behalf of the proposed Class against Defendant.

53.     Plaintiff and members of the Class conferred benefits on Landmark by paying room and fees, despite the closing of colleges and universities and attendant recommendations for social distancing and returning home.

54.     Landmark has knowledge of such benefits.

55.     Landmark has been unjustly enriched in retaining the revenues derived from Plaintiff and Class members' payments.  Retention of those moneys under these circumstances is unjust and inequitable because Landmark is charging its customers full price of a semester's worth of room and fees of which Plaintiff and Class members cannot reasonably avail themselves.

56.     Because Landmark's retention of the non-gratuitous benefits conferred on it by Plaintiff and members of the Class is unjust and inequitable, Landmark must pay restitution to Plaintiff and members of the Class for their unjust enrichment, as ordered by the Court.

## COUNT II
### Conversion

57.     Plaintiff hereby incorporate by reference the allegations contained in paragraphs 1-50 of this Complaint.

58.     Plaintiff brings this claim on their own behalves and on behalf of the proposed Class against Landmark.

59.     Landmark deprived Plaintiff and the other members of the Class of the value they paid for themselves (or the students on whose behalf they paid for) of their right to the services and amenities provided in the lease agreement.

11

60.     Plaintiff and members of the Class had a right to a refund of their room and fees while the schools the dormitories catered to were and remain closed; Landmark intentionally refused issuance of any refund or credit after the schools were closed; Plaintiff and Class members were harmed through Landmark's unlawful retention of room and fees; Landmark's conduct was a substantial factor in causing Plaintiff and Class members' harm.

61.     Plaintiff and members of the Class are entitled to the return of the prorated, unused amounts paid for room and fees through the end of the semester.

## COUNT III
## Money Had and Received

62.     Plaintiff hereby incorporates by reference the allegations contained in paragraphs 1-50 of this Complaint.

63.     Plaintiff brings this claim individually and on behalf of the members of the proposed Class against Landmark.

64.     Landmark received money in the form of room and fee payments that was intended to be used for the benefit of Plaintiff and the Class; however, those fees were not used for the benefit of Plaintiff and the Class, and Landmark has not given back or refunded the wrongfully obtained money and fees to Plaintiff and the Class.

## COUNT IV
## Florida Consumer Collection Practices Act

65.      Plaintiff hereby incorporate by reference the allegations contained in paragraphs 1-50 of this Complaint.

66.     Plaintiff bring this claim on his own behalf and on behalf of the proposed Class against Defendant.

67.    At all times relevant to this action Landmark is subject to and must abide by the law of Florida, including Florida Statute § 559.72.

68.    Landmark has violated Florida Statute § 559.72(7) by willfully engaging in other conduct which could reasonably be expected to abuse or harass the debtor Plaintiff or any member of her family.

69.    Landmark has violated Florida Statute § 559.72(9) by attempting to enforce a debt when Defendant knows that the debt is not legitimate, or to assert the existence of some legal right when Defendant knows that right does not exist.

70.    Landmarks' actions have directly and proximately resulted in Plaintiff's prior and continuous sustaining of damages as described by Florida Statute §559.77.

## **Prayer for Relief**

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, seek judgment against Landmark, as follows:

a.  For an Order certifying the Class under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiff as representative of the Class, and Plaintiff's attorneys as Class Counsel to represent the Class members;

b.  For an Order declaring that Landmarks' conduct violates the statutes and laws referenced herein;

c.  For an Order finding in favor of Plaintiff and the Class on all counts asserted, on behalf of the class, herein;

d.  For statutory, compensatory and punitive damages in amounts to be determined;

e.  For prejudgment interest on all amounts awarded;

f.   For an Order of restitution and all other forms of equitable monetary relief;

g.   For injunctive relief as pleaded or as the Court may deem proper; and

h.   For a declaration that the Lease Agreement and agreements between Landmark and Plaintiff are unenforceable; and

i.   For an Order awarding Plaintiff and the Class their reasonable attorneys' fees, litigation expenses, and costs of suit.

### INDIVIDUAL CLAIMS OF NAMED PLAINTIFF AGAINST 908 – SCANNELL (TALLAHASSEE), LLC

### COUNT V
### Rescission

71.   Plaintiff hereby incorporate by reference the allegations contained in paragraphs 1-50 of this Complaint.

72.   Plaintiff was in contractual privity with the Defendant, 908 – Scannell, as tenants of the Defendant's facilities. These contractual agreements involving the Plaintiff and Defendant were evidenced in writing and signed by the parties.

73.   As noted above, the purpose of the contractual undertaking between the Plaintiff and Defendant were to provide a "student apartment" living arrangement to Plaintiff.  The living space provided by this arrangement was bundled with a number of amenities and conveniences that particularly catered to students attending university campuses, such as a clubhouse, resort-style pool, grilling station, gaming lounge, coffee bar, fitness room and fire pit.

74.   There has been an "equitable breach" in this case that warrants rescission because issues of "impossibility of performance" and "frustration of purpose" have arisen.

75.   As to "impossibility of performance," 908 – Scannell, was obligated to provide the Plaintiff with access to common areas, clubhouse, resort-style pool, grilling station, gaming lounge, coffee bar, fitness room and fire pit, and other services.  However, as a result of the

COVID-19 pandemic, these common areas and services became both unsafe to provide and unsafe to use.

76.     To that end, it should be noted that the only private accommodation provided at The Nine by Defendant was a bed and bathroom in a shared apartment.  Each living unit had common space shared amongst multiple residents.  As such, essential daily living functions were necessarily performed in a shared common facility with other students that any individual student might not know well, thus presenting a great risk for COVID-19 infection.

77.     Indeed, it is noteworthy that very similar dormitory facilities run by the universities were closed down and the students urged to leave because the living arrangements were unsafe to occupy.  This was consistent with CDC guidelines which discouraged gatherings of more than 10 people and advised that stringent "social distancing" measures be taken to avoid transmission of COVID-19.  However, 908 – Scannell, through the decisions and direction of Landmark. because of its own selfish pecuniary interests, refused to acknowledge that the particular form of high-density housing arrangement that it provided was inconsistent with prudent safety measures.

78.     In addition to that, it was simply not possible for students to fully access common areas and amenities in a prudent manner.  Places such as the clubhouse, resort-style pool, grilling station, gaming lounge, coffee bar, fitness room and fire pit would have required student Class members to group together beyond what was prudent.  Even the heavily-used common hallways presented such a risk.

79.     For this reason, it was impossible for 908 – Scannell to provide what was bargained for under the lease contracts.

80.     As to frustration of purpose, the dorm-style living arrangement was offered as part of a bundled package of amenities that were a fundamental part of Defendant's performance under the contract.  As noted above, Defendant's living facilities and common amenities were rendered unsafe to use as a result of the COVID-19 pandemic.  The provision of these living arrangements along with the coupled amenities were the fundamental purpose of the individual Plaintiff's agreement and became frustrated by the fact that they could not be safely provided or used.

81.     In addition to its facilities being unsafe to use, Landmark marketed its premises as "the best apartment features & resort-style community amenities in town, all within walking distance to Doak Campbell Stadium and the heart of the Florida State University campus". Given that the university campuses were closed, and no campus activities were taking place because of the COVID-19 pandemic, this frustrated an essential purpose of the Plaintiff's contracts with 908 – Scannell.  Indeed, the very purpose of the Plaintiff's contract with Defendant was to allow the student Plaintiff to attend school on university campuses, which was of course not possible due to the closure of the university campuses.

82.     908 – Scannell,  has been provided with ample notice of the Plaintiff's desire for rescission, as noted above.

83.     This case is suitable for rescission because the parties can be equitably restored to their original position or, if that result would not be equitable, a balance of equities can otherwise be achieved.

84.      This count for rescission is pleaded in the alternative to any claim for legal relief. To the extent no remedy at law is available, rescission is appropriate.


**COUNT VI**
**Breach of Contract**


16

85.     The named Plaintiff hereby incorporate by reference the allegations contained in paragraphs 1-50 of this Complaint.

86.     The Lease Agreement provided that each resident "shall . . . have the right to use, in common with other residents of the community, swimming pools, saunas, spas, tanning beds, exercise rooms, storerooms, laundry rooms, stairs, passageways, parking areas . . . meeting rooms and other areas of the Community intended for use by all residents of the Community[.]"

87.     908 – Scannell has breached the contract because they are unable to safely provide these services and amenities.

<u>COUNT VII</u>
**Breach of Implied Covenant of Good Faith and Fair Dealing**

88.     The named Plaintiff hereby incorporates by reference the allegations contained in 1-50 of this Complaint.

89.     Plaintiff bring this claim on their own behalves.

90.     In performing its leases with Plaintiff 908 – Scannell has breached the implied covenant of good faith and fair dealing by:

a. Unfairly and in bad faith asserting that remaining in student housing is a reasonable option for Plaintiff and proposed Class members.  Student housing, whether on or off campus, are not designed to safely house students in the event of a pandemic, and, in order to stay safe, a vast majority of the students must move out in order to practice safe social distancing in accordance with CDC recommendations.

b. Unfairly and in bad faith representing that its properties serve as private residences to compliment students' academics.  However, once the schools have closed and the students it purports to serve have been forced to leave, the reality reveals itself that 908 – Scannell  does not consider its provision of room, board, and services to be

tied whatsoever to the schools or to the students' academics, as it has failed to refund unearned payments for room, board, and fees.

    c.   Unfairly and in bad faith failing to refund any monies paid by the Plaintiffs and proposed Class that remain unused as a result of the COVID-19 pandemic.

91.    As a result of 908 – Scannell breach of the implied covenant of good faith and fair dealing as set forth above, Plaintiff has been damaged.

## **Prayer for Relief**

WHEREFORE, the named Plaintiff, respectfully demands a trial by jury on all issues so triable and judgment against Defendant, 908 – Scannell (Tallahassee), Inc., for statutory damages, punitive damages, actual damages and any other relief the court may deem just and proper.

## **DEMAND FOR TRIAL BY JURY**

Plaintiff demands a trial by jury of all issues so triable.

Respectfully submitted,

*William "Billy" Peerce Howard, Esquire*
William "Billy" Peerce Howard, Esquire
Amanda J. Allen, Esquire
Heather H. Jones, Esquire
Florida Bar No. 0103330
Florida Bar No. 0098228
Florida Bar No. 0118974
THE CONSUMER PROTECTION FIRM
401 East Jackson Street, Suite 2340
SunTrust Financial Center
Tampa, FL 33602
Telephone: (813) 500-1500
Facsimile: (813) 435-2369
Billy@TheConsumerProtectionFirm.com
Amanda@TheConsumerProtectionFirm.com
Heather@TheConsumerProtectionFirm.com
***Attorneys for Plaintiff***